UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER CRENSHAW, | : | |
| Administrator of the Estate of | : | |
| THOMAS CRENSHAW, Deceased | : | **CIVIL ACTION - LAW** |
| 1701 Salem Road, Apt. I-6 | : | |
| Burlington, NJ 08016 | : | |
|       Plaintiff | : | **JURY TRIAL DEMANDED** |
| | : | |
|     v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | NO. |
| c/o United States Attorney | : | |
| 615 Chestnut Street, Suite 1250 | : | |
| Philadelphia, PA 19106 | : | |
|    and | : | |
| c/o Attorney General of the United States | : | |
| U.S. Department of Justice | : | |
| 950 Pennsylvania Avenue, N.W. | : | |
| Washington, DC 20530 | : | |
|    and | : | |
| c/o Philadelphia Veterans Administration | : | |
| Medical Center | : | |
| University & Woodland Avenues | : | |
| Philadelphia, PA 19104 | : | |
| | : | |
|       Defendant | : | |

**COMPLAINT**

Plaintiff, Christopher Crenshaw, Administrator of the Estate of Thomas Crenshaw, Deceased, by and through his attorneys, by way of Complaint, aver the following:

## JURISDICTION AND VENUE

Jurisdiction of this action is based upon 28 U.S.C. §1346(b) - United States Defendant, and 28 U.S.C. §1332 - Diversity of Citizenship, with the matter in controversy exceeding the sum of $150,000, exclusive of interest and costs. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2)(c).

## THE PARTIES

1. Plaintiff, Christopher Crenshaw, Administrator of the Estate of Thomas Crenshaw, his deceased father, is an adult citizen of the State of New Jersey, residing at 1701 Salem Road, Apartment I-6, Burlington, New Jersey, 08016.

2. Thomas Crenshaw, the decedent, had resided at 12 Ember Lane, Willingboro, New Jersey, 08046. The decedent passed away on March 26, 2001.

3. At all times material hereto, defendant Philadelphia Veteran's Administration Medical Center (hereinafter "PVAMC"), was a professional association and/or a partnership and/or a corporation and/or a hospital operating in Philadelphia, Philadelphia County, Pennsylvania. Defendant, PVAMC, provides and/or provided, directly and through its physicians, nurses, agents and employees, health care services to its patients/residents in numerous counties throughout the Commonwealth of Pennsylvania, including Philadelphia County.

4. At all times material hereto, Frederick F. Samaha, M.D., was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of his profession in Philadelphia, Pennsylvania at PVAMC.

5. At all times material hereto, Amanda Benson, M.D., was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of her profession in Philadelphia, Pennsylvania at PVAMC.

6. At all times material hereto, John J. Murphy, M.D., was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of his profession in Philadelphia, Pennsylvania at PVAMC.

7. At all times material hereto, Bruce Dunkman, M.D., was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of his profession in Philadelphia, Pennsylvania at PVAMC.

8. At all times material hereto, Elizabeth A. Tarka, M.D., was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of her profession in Philadelphia, Pennsylvania at PVAMC.

9. At all times material hereto, Seth J. Field, M.D., was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of his profession in Philadelphia, Pennsylvania at PVAMC.

10. At all times material hereto, Dr. Takakuwa, was a physician duly licensed to practice in the Commonwealth of Pennsylvania and was engaged in the practice of his/her profession in Philadelphia, Pennsylvania at PVAMC.

11. Plaintiff hereby invokes the doctrines of *Respondeat Superior* and *Vicarious Liability* as all negligent acts and/or omissions alleged in Plaintiff's Complaint were made by the aforementioned persons in their capacities as employees, servants, agents and/or ostensible agents of PVAMC and/or the United States of America. Upon information and belief, the aforementioned physicians are insured solely by the defendant, United States of America.

WHEREFORE, Plaintiff demands judgment against defendants, jointly, severally and in the alternative in an amount in excess of $150,000 together with interest costs and damages for pre-judgment delay and such other relief as is just and proper.

**FACTUAL ALLEGATIONS**

12. On or about May 14, 1999, at the age of 57 years, decedent had his initial office visit with John J. Murphy, M.D. at PVAMC, at which time Dr. Murphy noted that decedent had a past medical history that included hypertension, obesity and cigarette smoking. No family history was noted at the time of decedent's initial office visit.

13. On or about July 18, 2000, decedent had a routine follow-up visit with defendant, John J. Murphy, M.D. at PVAMC. No additional information was obtained at the July 18, 2000 office visit.

14. On or about January 16, 2001, decedent had an urgent office visit with defendant, John J. Murphy, M.D. at PVAMC. At that time, decedent complained of dyspnea and lower extremity edema. An EKG revealed that decedent was in atrial fibrillation. Decedent was admitted to the medical intensive care unit at PVAMC through the emergency department with a diagnosis of congestive heart failure, rule out myocardial infarction versus hypertensive cardiomyopathy.

15. At approximately 9:00 p.m. on January 16, 2001, decedent was transferred to the cardiac care unit at PVAMC and placed on intravenous nitroglycerine. At that time, an admission note was made in decedent's medical record which confirmed decedent's past family history which included three (3) brothers who died in their 50's of myocardial infarction as well as his father who died of congestive heart failure at the age of 54 years.

16. On January 17, 2001, decedent underwent an echocardiogram which revealed a hypertrophied left ventricle with preserved systolic function, an ejection fraction of 55%, an aortic valve with moderate calcific changes, a mitral valve with mild calcific changes with trace regurgitation and a moderately enlarged left atrium.

17. On January 19, 2001, decedent underwent a thallium stress test which showed moderate size perfusion defects in the apical-lateral wall, distal anterior-septal-apical wall and inferior-

lateral wall. Decedent's left ventricle was determined to be moderately dilated and his left ventricular ejection fraction was estimated at 31%.

18. On January 23, 2001, decedent underwent cardiac catheterization/angiography which was interpreted to reveal diffuse three-vessel disease. The following lesions were recognized: a) Ramus = 80-90% stenosis; b) Mid/Distal LAD = 50-70% stenosis; c) Circumflex = 90% lesion; and, d) RCA = 60-70% lesion.

19. The physician who interpreted the cardiac catheterization/angiography failed to recognize a significant lesion or lesions in other coronary vessels.

20. Decedent did not undergo angioplasty or coronary artery bypass surgery for treatment of his diffuse three-vessel disease or the other coronary lesion(s).

21. On January 25, 2001, decedent underwent a second echocardiogram which was interpreted to reveal a mildly enlarged left atrium with a mobile echodensity consistent with thrombus; a left ventricle with moderate concentric hypertrophy and an ejection fraction of 45%; a mildly calcified and thickened aortic valve; moderate aortic atherosclerosis; a mildly thickened mitral valve with trace regurgitation; a mildly enlarged right atrium; and, a normal right ventricle with mildly decreased contractile function. It was recommended that decedent undergo another echocardiogram at such time as he returned to a normal sinus cardiac rhythm to reevaluate his ejection fraction.

22. On January 29, 2001, decedent was discharged from PVAMC with diagnoses of atrial fibrillation, coronary artery disease and hypertension. Decedent was instructed to follow-up with the Coumadin Clinic and with Dr. Dunkman, a cardiologist on March 2, 2001.

23. On February 19, 2001, decedent presented to the Emergency Department at PVAMC with complaints of shortness of breath and difficulty walking. Decedent was admitted for treatment tot he PVAMC medical intensive care unit.

24. On February 21, 2001, decedent was evaluated by Dr. Frederick F. Samaha who determined that despite decedent's coronary artery disease, there was no clear need for revascularization.

25. Decedent was discharged from PVAMC on February 22, 2001 with prescriptions for oral medications and tentatively scheduled for cardioversion after he had achieved at least six (6) weeks of anticoagulation on Coumadin.

26. On March 2, 2001, decedent presented to Dr. Dunkman for his previously scheduled follow-up appointment. Dr. Dunkman noted the January and February admissions to PVAMC as well as decedents diagnoses of CAD, hypertension congestive heart failure and atrial fibrillation. Decedent's blood pressure was noted to be 194/98. Dr. Dunkman instructed decedent to return for a follow-up visit in one (1) month.

27. On March13, 2001, decedent presented to Dr. Murphy, his primary care physician, for a follow-up visit. Dr. Murphy noted that decedent had ceased smoking cigarettes for a period of nearly two (2) months. His blood pressure was noted to be 170/78. Decedent was instructed to return for a follow-up visit with Dr. Murphy in four (4) months.

28. On March 26, 2001, decedent was left his place of employment in Camden, New Jersey at approximately 4:00 p.m.. Decedent was observed to be short of breath by a security officer who initiated a call to 911. Decedent was nasally intubated and transported to Our Lady of Lourdes Medical Center in Camden, New Jersey where he was pronounced dead at 4:46 p.m. despite the timely initiation of CPR and life-saving techniques.

29. Decedent's cause of death was noted to be an acute myocardial infarction and coronary artery disease.

## COUNT ONE--NEGLIGENCE
## PLAINTIFF V. THE UNITED STATES OF AMERICA

Plaintiff repeats the allegations of the above paragraphs as if same were set forth at length.

30. Defendant, United States of America, was/is responsible for the operation and management of PVAMC, a hospital and/or medical center licensed and operating in the Commonwealth of Pennsylvania.

31. PVAMC was negligent, reckless, grossly negligent or careless through its employees, servants and agents in its medical care and treatment rendered to decedent on or about May 14, 1999 through March 26, 2001.

32. PVAMC was negligent, reckless, grossly negligent or careless in the hiring, firing and supervision of its employees, servants and agents.

33. PVAMC, through its employees, servants, agents and ostensible agents, owed a duty of care to Thomas Crenshaw which was breached to his great detriment by numerous acts or omissions, including but not limited to:

   a. Failing to properly perform the echocardiogram that was performed upon decedent on January 17, 2001;

   b. Failing to properly interpret the echocardiogram that was performed upon decedent on January 17, 2001;

   c. Failing to properly perform the thallium stress test that was performed upon decedent on January 19, 2001;

   d. Failing to properly interpret the thallium stress test that was performed upon decedent on January 19, 2001;

   e. Failing to properly perform the cardiac catheterization that was performed upon decedent on January 23, 2001;

   f. Failing to properly interpret the cardiac catheterization that was performed upon decedent on January 23, 2001;

   g. Failing to advise decedent to undergo a revascularization procedure;

h. Failing to advise decedent to undergo cardiac angioplasty;

i. Failing to advise decedent to undergo coronary artery bypass graft surgery;

j. Failing to advise decedent of the risks associated with the decision to forego a revascularization procedure;

k. Failing to advise decedent of the risks associated with the decision to forego coronary angioplasty;

l. Failing to fully advise decedent of the risks associated with the decision to forego coronary artery bypass graft surgery;

m. Failing to obtain decedent's past family history for myocardial infarction, congestive heart failure and coronary artery disease;

n. Failing to take into consideration decedent's clinical findings when recommending that he forego revascularization, coronary angioplasty and coronary artery bypass graft surgery;

o. Failing to take into consideration decedent's past family history when recommending that he forego revascularization, coronary angioplasty and coronary artery bypass graft surgery; and,

p. Failing to take into consideration all of decedent's risk factors for myocardial infarction, including race, age, weight and past family history when recommending that he forego revascularization and/or coronary angioplasty and/or coronary artery bypass graft surgery.

q. Failing to obtain decedent's informed consent with regard to his cardiac treatment and treatment options.

r. Failing to obtain decedent's informed consent as a result of not having properly advised him of the risks associated with failing to perform a revascularization procedure.

34. As a direct and proximate result of the negligence, recklessness, gross negligence and carelessness of PVAMC, through its employees, servants, agents and ostensible agents, decedent, Thomas Crenshaw, endured great physical and emotional suffering, pain, anguish, humiliation, embarrassment, loss of enjoyment of life, was caused to die and incurred medical bills as well as other costs.

35. Plaintiff hereby invokes the doctrines of *Respondeat Superior* and *Vicarious Liability* as all acts and omissions constituting negligence, recklessness, gross negligence and/or carelessness were committed by and through the aforementioned employees, servants, agents and ostensible agents of defendant in the course and scope of their duties at PVAMC.

WHEREFORE, Plaintiff demands judgment against defendant, The United States of America, jointly, severally and in the alternative in an amount in excess of $150,000 together with interest costs and damages for pre-judgment delay and such other relief as is just and proper.

## COUNT TWO–WRONGFUL DEATH
## PLAINTIFFS V. THE UNITED STATES OF AMERICA

Plaintiff repeats the allegations of the above paragraphs as if same were set forth at length.

36. Defendants, by and through the actions of their agents, ostensible agents, servants and/or employees, negligently, carelessly and recklessly failed to care for decedent, which negligence and carelessness led to the demise of decedent.

37. Plaintiff, Christopher Crenshaw, is the Administrator of the Estate of Thomas Crenshaw, deceased, having been appointed as his personal representative by the Camden County Surrogate's Court of the State of New Jersey.

38. As a direct and proximate result of the negligence, carelessness and/or recklessness of defendants, decedent, Thomas Crenshaw, was caused to die.

39. This civil action is brought pursuant to the Wrongful Death Act and the Pennsylvania Rules of Civil Procedure.

40. Decedent did not bring any other action during his lifetime and no other action for the death of decedent has been commenced against the defendants herein or any other persons.

41. Decedent, Thomas Crenshaw, was survived by the following statutory beneficiaries: Christopher Crenshaw, Philip L. Crenshaw, Kimberly R. Crenshaw, David M. Crenshaw and Bobbie Crenshaw. This action is brought to recover, on behalf of said statutory beneficiaries, all damages legally available under Pennsylvania law.

42. As a direct and proximate result of the death of decedent, Thomas Crenshaw, the statutory beneficiaries suffered pecuniary losses and have incurred medical bills and funeral expenses.

WHEREFORE, Plaintiff demands judgment against defendants jointly, severally and in the alternative in an amount in excess of $150,000 together with interest costs and damages for pre-judgment delay and such other relief as is just and proper.

## COUNT THREE–SURVIVAL ACTION
## PLAINTIFF V. THE UNITED STATES OF AMERICA

Plaintiff repeats the allegations of the above paragraphs as if same were set forth at length.

43. Defendants, by and through the actions of their agents, ostensible agents, servants and/or employees, negligently, carelessly and recklessly failed to care for decedent, which negligence and carelessness led to the demise of decedent.

44. Plaintiff, Christopher Crenshaw, is the Administrator of the Estate of Thomas Crenshaw, deceased, having been appointed as her personal representative by the Camden County Surrogate's Court of the State of New Jersey.

45. In his capacity as the Administrator of the Estate of Thomas Crenshaw, Plaintiff, Christopher Crenshaw, brings this civil action pursuant to the Pennsylvania Survival Act.

46. This civil action is brought to recover, on behalf of the Estate of Thomas Crenshaw, all damages legally recoverable under said Act of Assembly.

47. As a direct and proximate result of the negligence, carelessness and/or recklessness of defendants, decedent, Thomas Crenshaw, suffered grievous personal injuries and was caused to die.

48. As a direct and proximate result of the negligence, carelessness and/or recklessness of defendants, decedent, Thomas Crenshaw, suffered great physical pain and suffering prior to his death. Plaintiff's claims on behalf of the Estate of Thomas Crenshaw include damages for his physical and emotional pain and suffering.

WHEREFORE, Plaintiff demands judgment against defendants jointly, severally and in the alternative in an amount in excess of $150,000 together with interest costs and damages for pre-judgment delay and such other relief as is just and proper.

GARBER, KASTEN JARVE & MULLEN, P.A.

By:_____
    ADAM M. STARR
    Attorney for Plaintiff
    Attorney I.D. No. 88102
    1333 Race Street
    Philadelphia, PA 19107
    215-751-1700

DATED: June 19, 2002